**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| DEBORA C. BURFORD, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:15-cv-02074 (RMC) |
| JANET L. YELLEN, CHAIR, BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM, | ) ) ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Defendant Janet L. Yellen, Chair, Board of Governors of the Federal Reserve System (the "Board") hereby seeks dismissal of Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Alternatively, the Board seeks summary judgment pursuant to Federal Rule of Civil Procedure 56. The Board relies on the memorandum of points and authorities filed herewith in support of its motion.

Dated: May 12, 2016                          Respectfully submitted,

                                              /s/ Joshua P. Chadwick
                                             Joshua P. Chadwick, Senior Counsel
                                             D.C. Bar #502279
                                             Board of Governors of the
                                                Federal Reserve System
                                             20th Street and Constitution Avenue, N.W.
                                             Washington, D.C. 20551
                                             202-263-4835 (telephone)
                                             202-736-5615 (facsimile)
                                             joshua.p.chadwick@frb.gov

                                             *Counsel for Defendant Janet L. Yellen,
                                             Chair, Board of Governors of the Federal
                                             Reserve System*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEBORA C. BURFORD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:15-cv-02074 (RMC) |
| ) | |
| JANET L. YELLEN, CHAIR, ) | |
| BOARD OF GOVERNORS OF THE ) | |
| FEDERAL RESERVE SYSTEM, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Defendant Janet L. Yellen, Chair, Board of Governors of the Federal Reserve System (the "Board") hereby seeks dismissal of Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). As set forth below, each of Plaintiff's claims fails as a matter of law.

**BACKGROUND**

Plaintiff DeBora Burford was employed as a law enforcement officer in the Board's Law Enforcement Unit ("LEU") from December 2002 until the termination of her employment for misconduct in December 2011. Amended Complaint ("Am. Compl."), ECF No. 15, at ¶¶ 9, 103. Plaintiff pursued certain administrative claims of discrimination before the Equal Employment Opportunity Commission beginning in 2010, including claims that she was subjected to age- and sex-based hostile work environment and discrimination pursuant to the following allegations:

> 1. Based on her age (50) and sex (female), Complainant was harassed by a younger female law enforcement officer as follows: on December 1, 2009, the

>officer (Employee A) referred to Complainant as a b__ch during an oral altercation; on July 23, 2010, the officer accused Complainant of "bumping" her while on post; and on August 11, 2010, the officer accused Complainant of "putting [her] butt in [the officer's] face."
>
>2.  From August·12, 2010 to October 7, 2010, the Agency subjected her to discrimination based on sex and reprisal for prior protected activity when she was assigned to regular post duties rather than lead officer post duties (e.g., podium, Visitor Center).
>
>3.  On August 26, 2010, Complainant was subjected to sex, age, and reprisal discrimination when the Chief of the Law Enforcement Unit (LEU) and a Senior Employee Relations Specialist questioned and accused Complainant of disclosing unauthorized information to a former employee's criminal attorney.

*Burford v. Yellen*, EEOC DOC 0120130692 (Sept. 3, 2015) (attached hereto as Exhibit A), *available at* 2015 WL 5318992.  The EEOC's federal sector complaint processing guidance requires the compilation of an impartial factual record during the administrative phase, and requests for pre-trial dismissal are therefore typically treated as motions for summary judgment. *See generally* Equal Employment Opportunity Commission Management Directive 110 at 6-4,  7-17 (2015), *available at* www.eeoc.gov/federal/directives/upload/md-110.pdf.  Here, the presiding EEOC Administrative Judge granted the Board's motion for a decision without a hearing at the earliest available juncture and dismissed Plaintiff's claims in their entirety.  *See* Exhibit A at 2.  On appeal, the EEOC's Office of Federal Operations (the final level of administrative appeal) affirmed the Administrative Judge's decision to dismiss Plaintiff's claims, finding, *inter alia*, that "the complaint does not rise to the level of a claim of discriminatory harassment."  *Id.* at 4.  Plaintiff did not timely seek administrative relief regarding her 2011 termination (and did not therefore exhaust her administrative remedies as to that claim) and the EEOC did not address that issue as a result.  *See id.*

Following the EEOC's dismissal of her administrative complaint, Plaintiff filed her original *pro se* complaint in this Court on December 1, 2015.  ECF No. 1.  Although Plaintiff

initially named the agency and eight current or former Board employees in their individual capacities as defendants, *id.*, she sought and was granted leave to amend after the Board and the individuals moved to dismiss her claims in their entirety. *See* ECF Nos. 12, 14.

Plaintiff's Amended Complaint names only Board Chair Janet L. Yellen in her official capacity and includes the following claims: "Violations of the Age Discrimination in Employment Act ADEA" (Count I); "Sex-Based Discrimination Under Title VII of the Civil Rights Act of 1964" (Count II); "Disparate Treatment Under Title VII and ADEA" (Count III); "Disparate Impact Under Title VII and ADEA" (Count IV); "Pervasive and Objectively Hostile Working Environment" (Count V); "Retaliation Violations Under Title VII and ADEA" (Count VI); Whistleblower Retaliation Under 18 U.S.C. § 1831j" (Count VII); and "DCHRA-Aiding and Abetting-DC Code Ann § 2-1402l62" (Count VIII). Am. Compl. at 22-35.

## ARGUMENT

### I. Plaintiff's Federal Discrimination Claims Fail As A Matter Of Law

In Counts I-VI Plaintiff claims discrimination based on sex, age, and reprisal, and alleges that she was subject to a hostile work environment. Each of these claims is defective on its face.

#### A. Plaintiff Failed To Exhaust Administrative Remedies As To Any Adverse Employment Action

In Counts I-IV, Plaintiff alleges age- and sex-based discrimination under the ADEA and Title VII. These claims fail as a matter of law because Plaintiff did not suffer any adverse action for which she timely exhausted her remedies.

Although Plaintiff emphasizes her December 2011 termination in the Amended Complaint, she did not timely raise her termination through the administrative EEO process and therefore cannot pursue that claim in this Court. Title VII plaintiffs "'must timely exhaust the[ir] administrative remedies before bringing their claims to court.'" *Payne v. Salazar*, 619 F.3d 56,

3

65 (D.C. Cir. 2010) (quoting *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997)). Exhaustion of administrative remedies is likewise required under the ADEA prior to bringing a civil action. *Rann v. Chao*, 346 F.3d 192, 195-96 (D.C. Cir. 2003).

Here, it is undisputed that Plaintiff failed to timely bring an administrative claim based on her December 2011 termination. *See* Exhibit A at 1-2 (identifying those claims raised before the agency).[1] Although a minority of courts have allowed certain unexhausted claims to proceed to the extent they are "reasonably related" to claims that were exhausted—the majority rule is that a plaintiff "must demonstrate that he exhausted his administrative remedies with respect to each discrete act," *see Hicklin v. McDonald*, 110 F. Supp. 3d 16, 19 (D.D.C. 2015)[2]—Plaintiff's termination cannot satisfy even the lower threshold. Plaintiff's termination claim is in no way "reasonably related" to the three claims she did raise administratively—harassment by a younger co-worker in 2009 and 2010, assignment to regular post duties in 2010, and being questioned by her supervisors in 2010 regarding disclosure of Board information—and it necessarily fails as a

---

[1] Although Plaintiff baldly asserts that former Board attorney John Kuray "prevented Plaintiff's timely wrongful termination claim from being added to her ongoing EEO activity" and "Plaintiff's timely wrongful termination claim was submitted to the Board by [Plaintiff's former counsel] Ellen Opper-Weiner," Am. Compl. at ¶ 111, there is no dispute that Plaintiff's attempt to raise her termination was rejected by the Board's EEO Office for untimeliness on February 15, 2013, and that Plaintiff never appealed that decision to the EEOC or timely filed a civil action in federal court. *See* Exhibit D hereto (Board's Feb. 15, 2013 Dismissal Letter and attached EEO Counselor's Report (additional attachments omitted)); 29 C.F.R. §§ 1614.401-402 (appeal to EEOC must be filed within 30 days of agency dismissal); *id.* § 1614.407 (civil action must be filed within 90 days of agency dismissal if no administrative appeal filed).

[2] This Court has followed the majority rule. *See Rashad v. WMATA*, 945 F. Supp. 2d 152, 166-67 (D.D.C. 2013) (Collyer, J.) ("This Court is of the opinion that discrete acts of discrimination and retaliation require discrete charges and an opportunity for investigation before litigation.").

result.³ *See, e.g.*, *Koch v. Walter*, 935 F. Supp. 2d 164, 174 (D.D.C. 2013) (to be reasonably related, "a complainant must be specific enough in what claims he is making and the scope of those claims to put the agency on notice of what it must address in resolving the matter").⁴

Moreover, an allegedly discriminatory employment action taken *after* the administrative investigation of an EEO charge is complete cannot be reasonably related to the initial charge. In *Payne*, 619 F.3d at 65, the Court of Appeals, while not determining whether the "reasonably related" standard was viable, nonetheless dismissed a claim arising four months after completion of the administrative investigation, holding that "for a charge to be regarded as 'reasonably related' to a filed charge," it must "at a minimum arise from the administrative investigation that can reasonably be expected to follow the charge of discrimination." This "connection is necessary," the Court held, so that the agency has "an opportunity to resolve the claim administratively before the employee files her complaint in district court." *Id.* (internal alterations and quotation marks omitted); *accord Rashad v. WMATA*, 945 F. Supp. 2d 152, 167 (D.D.C. 2013). Here, it is undisputed that the administrative investigation of Plaintiff's 2010 discrimination complaint was complete as of April 21, 2011, *see* Exhibit B hereto (Report of Investigation Cover Page), and her December 8, 2011 termination cannot therefore be

---

³ As the Amended Complaint makes clear, Plaintiff was terminated for her involvement in a "spoofing scandal," not for any of the matters about which she had earlier initiated the EEO process. *See* Am. Compl. at ¶ 103.

⁴ Plaintiff also appears to claim that her 2010 performance evaluation of "Commendable" was discriminatory because she had received one level higher—"Outstanding"—the prior year. *See* Am. Comp. at 17-18. To the extent Plaintiff is alleging that this ordinary performance evaluation is an actionable instance of age-, sex-, or reprisal-based discrimination (and assuming for the sake of argument that such an evaluation could constitute adverse action), any such claim is barred because the evaluation was indisputably a discrete act that was never administratively exhausted. *See, e.g.*, *Pintro v. Wheeler*, 35 F. Supp. 3d 47, 53-54 (D.D.C. 2014) (dismissing claim of discrimination based on performance evaluation for failure to timely exhaust administrative remedies).

"reasonably related" to the charges contained in her administrative complaint.[5] Plaintiff's Title VII and ADEA claims regarding her 2011 termination must therefore be dismissed.

As to Plaintiff's claims other than termination, she has failed to establish that they involve adverse actions giving rise to actionable claims under Title VII or the ADEA. "In order to make out a prima facie case of discrimination, a plaintiff must show that '(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.'" *Antrum v. Washington Metro. Area Transit Auth.*, 710 F. Supp. 2d 112, 118 (D.D.C. 2010) (quoting *Stella v. Mineta,* 284 F.3d 135, 145 (D.C. Cir. 2002)). To establish an adverse employment action, there must be "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 760-61 (1988). In particular, "an employee suffers an adverse employment action if he experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find *objectively tangible harm*." *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002) (emphasis added). "While economic harm is not a prerequisite, it is the typical injury flowing from an adverse employment action." *Santa Cruz v.*

---

[5] Because Plaintiff repeatedly refers to the administrative Report of Investigation ("R.O.I.") in her complaint, *see* Am. Compl. at 4-5, 10-12, 19-20, the Court may consider this and other R.O.I. documents without converting defendants' motion to dismiss into one for summary judgment. *See, e.g.*, *Hicklin*, 110 F. Supp. 3d at 19 ("Because [plaintiff's] complaint refers to his EEO complaint and the resulting investigation . . . the Court will consider the associated documents produced in the [agency's] motion to dismiss without converting the motion into one for summary judgment.").

*Snow*, 402 F. Supp. 2d 113, 121 (D.D.C. 2005); *see also Burlington Indus.*, 524 U.S. at 762 ("A tangible employment action in most cases inflicts direct economic harm.").

      The closest Plaintiff comes to alleging an adverse employment action that was administratively exhausted is her claim that, although she was a member of the LEU's "lead officer program," she was not always assigned "lead officer posts." Plaintiff claims that LEU Administrative Sergeant Michelle Tillery-Fuller, who was "in direct charge of coordinating post assignments, . . . unreasonably assigned Plaintiff to 'standing' non-lead officer posts that required Plaintiff to carry the hefty UMP-40 submachine gun, with the weapon's strap painfully digging into Plaintiff's shoulder." Am. Compl. at ¶ 44. Plaintiff's dislike of standing posts or carrying a submachine gun notwithstanding, Plaintiff makes no allegation that her post assignments caused (or were even capable of causing) any "objectively tangible" harm. She does not contend that the standing post assignments to which she was assigned, or the carrying of a submachine gun on such posts, were not normal, required duties of LEU officers, only that she was assigned to such posts more often than she thought appropriate. That Plaintiff was unhappy with post assignments that required standing rather than sitting, or that were otherwise objectionable to her, simply cannot establish adverse employment action for purposes of a disparate treatment discrimination claim, however. To the contrary, the law is clear that "[p]urely subjective injuries, such as dissatisfaction with a reassignment or public humiliation or loss of reputation are not adverse actions," *Forkkio*, 306 F.3d at 1130-31 (internal citations omitted), and "[m]inor changes in work-related duties or opportunities do not constitute adverse employment actions without some tangible harm." *Ndondji v. InterPark Inc.*, 768 F. Supp. 2d 263, 281 (D.D.C. 2011). "[E]mployment-related grievances amounting to dissatisfaction with [plaintiff's] working conditions . . . cannot qualify." *Id.* Plaintiff's Counts I-IV fail as a result.

### B. Plaintiff's Allegations Fail To Establish A Hostile Work Environment As A Matter of Law

Although Plaintiff claims in Count V that she was subject to a "pervasive and objectively hostile working environment," *see* Am. Compl. at 30, the facts alleged cannot support this erroneous legal conclusion.

As the Supreme Court has made clear, "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998). Conversely, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Courts considering hostile work environment claims must examine "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23. The hostile work environment standard is "sufficiently demanding to ensure that Title VII does not become a 'general civility code'" and "ordinary tribulations of the workplace" do not give rise to a Title VII claim. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1988).

Here, Plaintiff claims that she was subject to an unlawfully hostile work environment based on a litany of grievances she maintains against a range of Board employees, including a coworker, LEU managers, an Office of Inspector General investigator, a Board attorney, and Board Employee Relations representatives. *See* Am. Compl. at 30-32; *see also id.* at 35 ("Fuller, Dublin, Sauls, Pleasant, Hargo, Love, Mills-Little and other officials' [sic] of the Board, aided

and abetted one another in orchestrating and executing a massive discriminatory and retaliatory scheme against the Plaintiff.").

Plaintiff focuses her claims on her non-supervisory co-worker Shandra Love, alleging that Love was "deliberatively aggressive and hostile" when Love (a) called Plaintiff a rude name to a third party while speaking on her cell phone and then, "[w]ith [Love's] cell phone to her ear, [] took what appeared to be an aggressive fighter's stance," (b) "made unprovoked false accusations that Plaintiff bumped her in the back," and (c) "falsified claims that Plaintiff intentionally brushed her hair with her buttocks as Love leaned over her purse which was sitting on a locker room bench directly in front of Plaintiff's locker" and then "engaged in a barrage of aggressive obscenities against Plaintiff." *See* Am. Compl. at ¶¶ 230, 12-16, 24, 28-31.

Plaintiff claims that LEU Administrative Sergeant Michelle Tiller-Fuller contributed to the allegedly hostile work environment by assigning Plaintiff to standing rather than sitting posts and that LEU Lieutenant Larence Dublin indirectly harassed Plaintiff by conspiring with and ignoring her complaints about Love and Tillery-Fuller. *See* Am. Compl. at ¶¶ 230-31, 163, 43-44. Plaintiff also claims that the hostile work environment included a one-time meeting with LEU Chief Billy Sauls and Senior Employee Relations Specialist Keisha Hargo about whether Plaintiff had provided an internal incident report to an outside attorney. *See* Am. Compl. at ¶¶ 232, 66-69. Finally, although she did not raise these issues before the EEOC, Plaintiff alleges that the conspiracy against her included the investigatory activities of the Office of Inspector General, the legal activities of Board counsel in addressing her administrative complaint of discrimination, and interactions between the Board's Employee Relations personnel and prospective employers. *See* Am. Compl. at ¶¶ 234-238, 91, 97-99, 109-111. Even accepting all

9

of these allegations as true, they are far from sufficient to establish an unlawfully hostile work environment.

As an initial matter, there are no factual allegations in the record that would tie the alleged harassment of Plaintiff to either her age or her gender, as is required. *See Harris*, 510 U.S. at 21 (discrimination only actionable if it is "*because of*" protected characteristic (emphasis added)). Although Officer Shandra Love—the non-supervisory co-worker Plaintiff identifies as her principal harasser—is younger than Plaintiff, there are no factual allegations plausibly suggesting that the personal conflict between the two was based on Plaintiff's sex or age[6] or that LEU management overlooked Love's alleged conduct based on Plaintiff's age. In fact, there is no allegation plausibly tying *any* Board employee to discriminatory harassment based on *any* protected characteristic. This goes for Sergeant Michelle Tillery-Fuller, the senior female officer who set the post assignments about which Plaintiff complains. And it goes for the one-time meeting lasting an hour or less with Sauls and Hargo, who are not linked to discriminatory animus in any way and, by virtue of their positions, had perfectly legitimate reasons to meet with Plaintiff as part of a routine inquiry. Indeed, the same can be said of all of the individuals—many of whom share the same gender or are older than Plaintiff—who

---

[6] To the contrary, Plaintiff specifically alleged that Love had a history of "behavioral issues" with her colleagues unrelated to any discriminatory animus. *See* Am. Compl. at ¶ 138. And, to the extent Plaintiff claims that she was subjected to a hostile work environment based on her belief that Dublin or other LEU supervisors treated Love more favorably than her, this is insufficient as a matter of law. A plaintiff does not state a claim for hostile work environment harassment based on her belief that others are treated better than she is, unless, at very least, her own treatment is objectively hostile and harassing. *See, e.g.*, *Bell v. Gonzales*, 398 F. Supp. 2d 78, 92 (D.D.C. 2005) ("Occasional instances of less favorable treatment involving ordinary daily workplace decisions are not sufficient to establish a hostile work environment.").

allegedly "aided and abetted one another in orchestrating and executing a massive discriminatory and retaliatory scheme against the Plaintiff." *See* Am. Compl. at 35.[7]

In any event, these isolated events over a period of years,[8] taken together, are not the type of "severe or pervasive" conduct necessary to establish an actionable, objectively hostile work environment. To the contrary, the events Plaintiff alleges demonstrate the "ordinary tribulations of the workplace" and are far from establishing an actionable hostile work environment. *See Faragher*, 524 U.S. at 788; *Badibanga v. Howard Univ. Hosp.*, 679 F. Supp. 2d 99, 103-04 (D.D.C. 2010); *accord* Exhibit A at 4 ("Combining the incidents as a whole and considering the frequency of the alleged discriminatory conduct, its severity, whether the conduct was physically threatening or humiliating, and whether the conduct unreasonably interfered with Complainant's work performance, we find no unlawful discrimination. . . . The conduct of which Complainant has complained is not severe or pervasive enough to create an objectively hostile work

---

[7] To the extent Plaintiff makes threadbare, conclusory allegations that she was harassed based on protected characteristics, *see* Am. Compl. at ¶ 164, this is insufficient as a matter of law. *See Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009) ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *Amiri v. Gelman Mgmt. Co.*, 501 F. App'x 3 (D.C. Cir. 2013) ("Appellant's complaint did not allege sufficient facts to support an inference that he was a victim of discrimination."); *Middlebrooks v. Bonner Kiernan Trebach & Crociata*, 671 F. Supp. 2d 61, 63 (D.D.C. 2009) (dismissing discrimination complaint where "[e]ven if the complaint is read in the light most favorable to the plaintiff and all reasonable inferences are construed in her favor, there are *no* facts that support an inference of either discrimination or retaliation" (emphasis in original)), *aff'd sub nom. Middlebrooks v. Bonner Kiernan Trebach & Crociata, LLP*, No. 09-7161, 2010 WL 2574158 (D.C. Cir. June 16, 2010); *Slate v. Pub. Def. Serv. for D.C.*, 31 F. Supp. 3d 277, 297-98 (D.D.C. 2014) (dismissing discrimination complaint where there was "nothing to support a causal inference that gender was [defendant's] motivating factor, other than the plaintiff's conclusory allegations"). This is particularly true where, as here, Plaintiff has already had the benefit of discovery during the administrative process and has nonetheless failed to identify any fact that would plausibly link her alleged harassment to any protected characteristic.

[8] Plaintiff's initial alleged encounter with Love was in December 2009. Am. Comp. at ¶ 12.

environment that a reasonable person would find hostile or abusive."). Plaintiff's Count V fails as a result.

### C. Plaintiff Fails To Allege Materially Adverse Action Or A Nexus Between Her Protected Conduct And Alleged Retaliation

"To establish a prima-facie case of retaliation, the plaintiff must demonstrate that (1) he engaged in protected activity; (2) the employer took an adverse personnel action against him; and (3) there is a causal link between the adverse action and the protected activity." *Lockamy v. Truesdale*, 182 F. Supp. 2d 26, 37 (D.D.C. 2001). Although "adverse action" in the retaliation context is somewhat broader and not "coterminous" with the substantive adverse action requirement, *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006), the Supreme Court has made clear that objective, materially adverse harm is nonetheless required:

> The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm, . . . [and] a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination . . . . We speak of *material* adversity because we believe it is important to separate significant from trivial harms. Title VII, we have said, does not set forth 'a general civility code for the American workplace' . . . [and] [a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience.

*Id.* (citations omitted; emphasis in original).

Here, Plaintiff claims retaliation based on her allegations that, after she complained to the Board's EEO Office about her co-worker Shandra Love's alleged harassment of her, she was assigned to non-lead posts for a few weeks and was questioned for no more than an hour by her management about a work-related matter in August 2010. *See* Exhibit A at 2; Amended

Complaint at ¶¶ 36, 66, 72.[9] These incidents are insufficient to establish material adverse action as a matter of law. *See Baloch v. Kempthorne*, 550 F.3d 1191, 1198 (D.C. Cir. 2008) (imposition of sick leave restrictions, proposed suspensions, letter of counseling, letter of reprimand, unsatisfactory performance review, and occasional profanity-laden yelling insufficient to establish materially adverse action in retaliation context). Plaintiff's retaliation claim fails as a result.

Moreover, even if Plaintiff could establish the requisite protected activity and material adverse action in this case, her retaliation claim fails because it does not include any allegations of fact sufficient to establish a "causal link" between her protected activity and the allegedly retaliatory events. Rather, Plaintiff simply asserts that these ordinary workplace actions were retaliatory. As the EEOC noted in its decision dismissing Plaintiff's claims, this is utterly insufficient. *See* Exhibit A at 4 (Plaintiff "did not show a causal nexus between the alleged conduct and her protected bases. Further, even if the Agency was aware of Complainant's prior protected activity, she has not shown, *beyond her belief*, that prohibited retaliation motivated it." (emphasis added)).

And Plaintiff's allegations do nothing to suggest why the Court should infer that Ms. Tillery-Fuller, Ms. Hargo, or Mr. Sauls (or anyone else) would want to retaliate against Plaintiff based on her EEO complaints about treatment by her co-worker Shandra Love. *See* Am. Compl. at ¶ 120 ("Plaintiff further alleges that she filed her EEO complaint after LEU managers failed to address *Love's* aggressive and potentially violent behaviors); *id.* at ¶ 167 ("It

---

[9] To the extent Plaintiff makes other allegations of retaliation in her Amended Complaint, any such claims were not administratively exhausted and are barred. *See supra* at 3-4; *Rashad*, 945 F. Supp. 2d at 166-67 ("discrete acts of discrimination *and retaliation* require discrete charges and an opportunity for investigation before litigation" (emphasis added)).

was *Love's* initial hostilities toward Plaintiff, and LEU management's failure to act on Plaintiff's complaints of her being subjected to an objectively hostile working environment that brought Plaintiff's claims into existence."); *id.* at ¶ 121 ("Plaintiff began documenting and reporting events of hostilities exhibited *by Love*") (Emphases added.)  Plaintiff's retaliation claim fails for this additional reason.  *See, e.g.*, *Perry v. Clinton*, 831 F. Supp. 2d 1, 24 (D.D.C. 2011) (retaliation claim that does not establish why supervisor "would decide to retaliate against *her* [plaintiff] because she filed a complaint against someone else" fails as a matter of law (emphasis in original)).

      Alternatively, the Court should grant summary judgment to the Board on plaintiff's retaliation claim.[10]  As to the lead post assignments, Plaintiff makes clear in the Amended Complaint that Sergeant Tillery-Fuller was the individual responsible for post assignments and therefore for the allegedly retaliatory assignments.  *See* Am. Compl. at ¶ 40 ("Michelle Tillery-Fuller . . . was directly in charge of Plaintiff's post assignments"); *id.* at ¶ 44 (Tillery-Fuller was "LEU Administrative Sergeant, and in direct charge of coordinating post assignments").  The evidence is undisputed, however, that Tillery-Fuller was unaware of Plaintiff's EEO activity when she made the challenged assignments and the assignments could not therefore have been

---

[10] To the extent that the Court may rely on matters outside of the pleadings, the Court may enter summary judgment in favor of the defendant.  *See* Fed. R. Civ. P. 12(b), 56.  Plaintiff should take notice that any factual assertions contained in the documents in support of this motion may be accepted by the Court as true unless she submits her own affidavit or other proper, documentary evidence contradicting the assertions in the documents.  *See Neal v. Kelly*, 963 F.2d 453, 456-57 (D.C. Cir. 1992), Local Rule 7(h), and Fed. R. Civ. P. 56(e) ("Failing to Properly Support or Address a Fact.  If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:  (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.").

retaliatory.  Tillery-Fuller provided sworn testimony during the EEOC administrative process that she learned of Plaintiff's EEO activity in 2011, *after* she made the allegedly retaliatory post assignments between August·12, 2010, and October 7, 2010.  *See* Exhibit C hereto (Tillery-Fuller R.O.I. Affidavit) at 2; Exhibit A at 2 (identifying relevant dates).  Although Plaintiff's counsel deposed Sergeant Tillery-Fuller and many others during the administrative discovery process, *see, e.g.*, Am. Compl. at 37, 50, 52, 76, Plaintiff has failed to identify any evidence that would call this testimony into question.  The post assignments, therefore, cannot be considered as part of Plaintiff's retaliation claim.  And the single meeting between Plaintiff, Billy Sauls, and Keisha Hargo, standing alone, is utterly insufficient as a matter of law to establish the objective harm required.  *Burlington Northern*, 548 U.S. at 67-68; *Baloch*, 550 F.3d at 1198.

## II.   Plaintiff's Whistleblower Claim Is Time-Barred

In Count VII, Plaintiff alleges a claim of whistleblower retaliation under 12 U.S.C. § 1831j.  That statute provides that:

> No Federal banking agency . . . may discharge or otherwise discriminate against any employee with respect to compensation, terms, conditions, or privileges of employment because the employee (or any person acting pursuant to the request of the employee) provided information to any such agency or bank or to the Attorney General regarding any possible violation of any law or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety by . . . any such bank or agency . . . [or] any officer or employee of the agency which employs such employee.

12 U.S.C. § 1831j(a)(2).  Even if Plaintiff could conceivably satisfy the substantive requirements of this statute, however, the two year statute of limitations for such a claim has long expired.  Pursuant to 12 U.S.C. § 1831j(b), an "employee or former employee who believes he has been discharged or discriminated against in violation of" the statute "may file a civil action in the appropriate United States district court *before the close of the 2-year period beginning on the date of such discharge or discrimination.*"  (Emphasis added.)  Because Plaintiff was terminated

on December 8, 2011, she was required to file any suit under § 1831j by no later than December 8, 2013; instead, her initial Complaint was filed on December 1, 2015, almost two years out of time. Plaintiff contends that the Court should ignore the statute of limitations because the Board "has intentionally withheld information from Plaintiff" and "caused Plaintiff to fear for her safety [resulting] in Plaintiff's severe psychological trauma," Am. Compl. at 34, but fails utterly to tie these allegations with any reason why she could not have timely filed her whistleblower claim. She cannot claim that the Board "intentionally withheld" from her the fact of her termination in 2011, and she was aware enough of her claims of harassment to have raised them in the EEO process in 2010. Had she believed herself to be a "whistleblower," Plaintiff could have readily filed a claim pursuant to 12 U.S.C. § 1831j at that time or within two years of her termination. There is no basis whatsoever to support tolling of the long-expired statute of limitations for a whistleblower claim and Count VIII must be dismissed as a result.

### III.    Plaintiff Cannot Bring A State Law Discrimination Claim

Although Plaintiff makes her principal claims pursuant to Title VII and the ADEA, she also asserts violation of the District of Columbia Human Rights Act ("DCHRA") in Count VIII on the grounds that "Title VII and the ADEA each lack aiding and abetting provisions which allows this Court to rely upon District of Columbia anti-discrimination law." *See* Am. Compl. at 34-35. Plaintiff misunderstands the law. It is well established that a state or municipal law cannot waive the sovereign immunity of the federal government, and the DCHRA claim must therefore be dismissed even if it were not otherwise defective. *See, e.g.*, *Jordan v. Evans*, 404 F. Supp. 2d 28, 30 (D.D.C. 2005) (dismissing DCHRA claim against Secretary of Commerce); *accord Brown v. GSA*, 425 U.S. 820, 835 (1976) (Title VII provides the exclusive judicial remedy for claims of discrimination in federal employment). Indeed, Plaintiff's "aiding and

abetting" theory notwithstanding, there is no exception to the rule that "the federal government cannot be sued under DCHRA." *Jordan*, 404 F. Supp. 2d at 30; *see also Hoffman v. District of Columbia*, 643 F. Supp. 2d 132, 139 (D.D.C. 2009) (same); *Marcus v. Geithner*, 813 F. Supp. 2d 11, 17 (D.D.C. 2011) ("The D.C. Council, not Congress, enacted the DCHRA, and there is no federal statute that evinces Congress's intent to waive the United States' immunity from suit under the DCHRA."). Count VIII fails as a result.[11]

## CONCLUSION

For all of the foregoing reasons, the Board respectfully requests that the Court grant its motion and dismiss Plaintiff's Amended Complaint.

Dated: May 12, 2016                    Respectfully submitted,

 /s/  Joshua P. Chadwick
Joshua P. Chadwick, Senior Counsel
D.C. Bar #502279
Board of Governors of the
   Federal Reserve System
20th Street and Constitution Avenue, N.W.
Washington, D.C.  20551
202-263-4835 (telephone)
202-736-5615 (facsimile)
joshua.p.chadwick@frb.gov

*Counsel for Defendant Janet L. Yellen, Chair, Board of Governors of the Federal Reserve System*

---

[11] Although Plaintiff includes passing reference to provisions of the United States Constitution and certain federal statutes other than Title VII and the ADEA in the Amended Complaint, *see* Am. Compl. at ¶ 92 (Electronic Communications Privacy Act); ¶ 117 (Privacy Act of 1974); ¶ 125 (No FEAR Act); ¶ 128 (Fifth Amendment right to due process); ¶ 206 (Electronic Communications Privacy Act and Fourth and Fifth Amendment rights); and ¶¶ 207, 238 (Privacy and Freedom of Information Acts), the Board does not read the Amended Complaint as attempting to assert independent causes of action pursuant to those provisions. Any such claims would fail in any event for the reasons given in the Board's motion to dismiss Plaintiff's original complaint, *see* ECF No. 12, which the Board incorporates herein to the extent necessary.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of May, 2016, the foregoing Motion to Dismiss was served on the following by First-Class U.S. Mail and electronic mail:

>DeBora Burford
>8560 Paragon Court
>Upper Marlboro, MD  20772
>deboraburford@yahoo.com

>  /s/  Joshua P. Chadwick
> Joshua P. Chadwick